May it please the court, Beth Brinkman and my co-counsel Kathy Hancock appearing on behalf of the defendant's FBI and the Department of Justice. I'd like to reserve two minutes of my time for rebuttal. Your Honor, the District Court erred in ordering unsealed sensitive national security and law enforcement information in this case. The District Court had ordered that the government submit ex-party in-camera submissions to the court and held hearings on that. That does not mean that the information that the government submits somehow then becomes public, disclosable information. FOIA itself talks to the situation in Section 552A-4B and specifies that courts can engage in in-camera review in FOIA cases. It would make no sense otherwise to interpret it to mean that as soon as non-public information was provided to explain why non-public information cannot be disclosed, to somehow turn that into a situation where any time there was a FOIA suit, the plaintiffs would necessarily be getting some of the information that was very subject of the non-disclosure requirement. Ms. Brinkman, I want to be sure I understand the government's position on one thing. Obviously, the District Court was very angry that it felt that the government had misrepresented things. Your Honor, could I suggest that perhaps we would address that during the session? Okay. Very well. I guess what troubles me is how there's jurisdiction over this matter when the FOIA action is still going on. We believe, Your Honor, under the collateral order doctrine, or under mandamus, the court would have jurisdiction here. The District Court's order to unseal the order conclusively decides the issue. It's a separate legal issue from the merits, and it can't wait until final appeal because disclosure would moot the issue. Certainly also, we believe under the court's mandamus authority, it clearly has jurisdiction here. There's no other remedy to protect the sensitive national security and law enforcement information. The court clearly erred, and again, an appeal would not be adequate relief. Well, what was the closest authority on the appealability of this? Copley, Your Honor. The Copley press case, we believe, is very close. That was a case in which a journalist intervened to get access to different types of documents that were submitted in conjunction with a plea agreement. Copley went through the collateral order standards and held that it was appealable. We also, again, think that... But did that deal more with matters of intervention? It's difficult to even know there's intervention because really the whole analysis of the case was about whether or not something was subject to disclosure,  and in that case, it realized that to order disclosure of a document is something that can't wait until a later scenario. But we would think that the writ of mandamus would certainly apply here. I would also address the arguments that the plaintiff has raised concerning... I'm just wondering, with respect to sealing, one would think that this issue would arise quite a bit, and yet I can't see any authority where a similar question has been decided. Your Honor, the cases where we've looked at in both the FOIA and non-FOIA contests, for example, to make our point that it's not just classified information that can be submitted ex parte and in camera, don't talk so much in terms of sealing, but the information is kept ex parte and in camera throughout the proceedings. What's extraordinary here is that the court ordered this transcript to be unsealed, or the order to be unsealed. So that's how we come... The other cases in which we see ex parte in camera do not involve that kind of order during the pendency of litigation. And we would point to many cases from both this Court and the D.C. Circuit, which has frequent FOIA cases. How does that cut? It certainly would weigh in our favor, I think, under the court's mandamus authority, with the importance of the issue and the need for the court to address it, because there is no other adequate remedy to protect the sensitive national security and law enforcement information if the order is unsealed. In the context of the various other FOIA and non-FOIA cases from this Court and others we've talked about, the ex parte in camera proceeding is an unusual scenario. There's no doubt about that. But the court has also recognized in various situations that it's necessary. For example, the Meridian case was a federal torts claimant case, and there was a sealed affidavit in that case having to do with whether or not an FBI agent who was sued was acting within the scope of his employment. Also, of course, the grand jury case, there's often grand jury information. And I think in the area of case from the D.C. Circuit, there's a good explanation of this clear recognition that FOIA, Congress, made clear that there could be ex parte in camera proceedings, and that you can't then make that a condition that that kind of information is somehow releasable. So we would say that plaintiffs are incorrect in suggesting it would be limited to only classified information, certainly here for national security and law enforcement purposes. We also submit that there is no due process right to disclosure of the order without any revision or redaction. It's difficult to know exactly what the due process right here is. There's no kind of government benefit, which normally one would see in that kind of case. I think to the extent plaintiffs couch it as some kind of First Amendment right, but in the due process context, the interest is one really in a FOIA litigation. It's not a criminal proceeding. It's really just about access under a statutory scheme. And on the other side, we have the government's compelling interest in protecting national security and law enforcement interests. Normally a procedural order, which is essentially what this is, that doesn't go to the merits of the case would be public. Yes, Your Honor, it is an unusual scenario. There's no doubt about it. But I think also, unlike most of the due process cases, where there are real concerns about whether or not some right can be denied without a hearing, here, the safeguard of an Article III federal district court judge, having reviewed the information, really just adds to the weight of the compelling interest of the government. There's little risk of error because of that. Turning to the plaintiff's arguments that because this is a court order, there's some kind of different entitlement under some First Amendment or common law right of access, we would point out first, in Coakley Press, this court itself had a sealed part of its order. There was a sealed addendum that was sent only to other courts, the Court on Remand and the Government Council. And to the extent there be any First Amendment issue here, we point out that this court and the Supreme Court have not decided that these are no limited First Amendment rights. There were proceedings. To the extent there be any common law right, we think that's not here in this case for the same reasons as in Coakley. And in any event, the statutory scheme established by Congress under FOIA would trump that. And ultimately, under any kind of weighing analysis, if there were a limited right of access, we'd have the compelling government interest in the national security and law enforcement information, the probable harm that's established, and there's no alternative to protect that. The last point I would make was also directed to plaintiffs arguing that at a minimum, there should be a release to the counsel, kind of an attorney's eyes only argument. There's several problems with that approach. One, there's always an issue of that straining the attorney-client relationship when that happens. So in the context of FOIA here, it would be particularly troubling, because unlike in perhaps a case where a defendant's liberty is at stake and there's some particular information that needs to be provided to counsel, here it would be providing counsel with the exact type of nonpublic disclosure that is not subject to release under the lawsuit. And so the attorney would be getting some of the information. That was the whole point of the reason that he was retained, to bring the suit. So that really creates quite a strain on the attorney-client relationship. Also, the... Is your argument really that unlike a criminal case where counsel is attempting to defend his client and must do so in essence with one hand tied behind his back because he can't confer with his client about the information that only he can see? Here, this is a FOIA action. The attorney's not defending the client against anything other than the client's desire to get access to information. That's exactly right, Your Honor. That's why the situation is so different from those other scenarios. So it's not really a due process or a Sixth Amendment issue at all? No, Your Honor, not at all. And I'd also point out that particularly in the situation of national security and law enforcement, but it also would really be not sticking with the dictates of FOIA that the government can not disclose certain information, but it would also be going to, in fact, disclose information and really just mitigating it to some extent. I think that's very difficult to do in the national security scenario to trace if or who may have leaked inadvertently. We're not suggesting any intent by counsel, certainly, but it's a very difficult scenario there also. And I guess the other main point we'd make about the problem with releasing only to counsel is this perception and how it affects witnesses and others involved in providing confidential information to the government. It erodes the concept of the confidentiality. If there is a precedent that information that's provided by the government to explain why information is not public, then somehow it's subject to becoming public. If there's nothing further, Your Honor, I'd reserve the remainder of my time. Good morning, Your Honor. I'll hear a lot of them for the plaintiffs. I'd like to begin with the threshold question, which is really whether myself, my co-counsel, Ms. Pastorella, and Mr. Haraldson from Skadden Arts, whether we can participate meaningfully in this appeal. I don't know if the Court has a clear sense of how strange the argument that I just listened to would sound if you had not seen the decision below. That's a separate question, though, from the one that I was just exploring with Ms. Brinkman, because this is not a criminal proceeding. It's not even a civil proceeding to the extent that there's damages that are being sawed and a claim against the government to right a wrong. It's a question of, you know, to what are citizens entitled under the Act? And the argument you're making is essentially, I can't do my job as an advocate if I can't see what's really at stake here. And the question is, I guess, why do you need to know if a congressional determination has been made? I think there are some things under FOIA that nobody gets to see. Well, Your Honor, I think the congressional determination that no one gets to see, right, that's the underlying issue. And so the question here, the interest that we have, is the interest in the adversarial process itself. That interest is present whether it's a Guantanamo habeas case where the lawyers get to see even the classified information, get to see all the unclassified information. It's true in the property disputes. But in Guantanamo, you've got a client's liberty as that state. We have a much more compelling reason why counsel needs access in that case than in a request for information. Well, there are two responses to that, Your Honor. First, it's not limited to situations involving liberty. Designated terrorist organizations themselves, not just their lawyers, but organizations themselves are allowed to see the unclassified information when they challenge the validity of their designation. And that's because the information, even though obviously it pertains to national security. But that's not what we have. We don't have that kind of a person. Right. So the second, but my point is just going to be. We're not at that. We're not in that kind of a civil case yet, counsel. Right, Your Honor. But my point is just to draw a hard line, liberty versus non-liberty, not acceptable given the existing case law. Your Honor, the question I was trying to raise with you was what is it that we as a court are supposed to balance here? You're making a very fine argument with regard to preserving the adversary system and the appellate process. But the interest here is really not that. The interest here is who gets to see what. Well, I think the interest is the interest in any FOIA case. And that interest is an interest which Congress took very, very seriously. It's the need for open government. Well, counsel, that's my problem. This is a statute which does give rights to the public to see information. Yes, Your Honor. But it also has built into the statute exceptions that essentially are judgments by Congress that this kind of information, the government has a right to withhold from the public. Well, Your Honor. And somebody has to make the decision as to whether or not it can be withheld or not. But I don't see in the statute, as contemplated, that that is something that gets trumped by the adversarial process in any sense. That's true, Your Honor, that it's a case-by-case decision whether or not it gets trumped by the adversarial process. We cite the legislative history. It's on page 29 of our brief. In 1974, in the Amendments to FOIA, Congress imagined that courts would permit counsel to see under attorneys' eyes only, under some circumstances, to aid the adversarial process. That's what I'm asking this Court to do. That's not a decision that this Court had a chance to make. So you want us to sort of invoke SIPA? Is that what you're saying? It's not SIPA, although it's analogous. So it's similar to that? It is similar to procedures in SIPA, Your Honor, although it's contemplated in FOIA itself under the 1974 amendments. But again, I get back to the problem I'm having with your argument, and that is that that statute was written in order to address the practical problem encountered in litigating civil claims or criminal cases where there is a different interest at stake, which is the interest of the parties to the litigation where issues are joined in order to maximize the effectiveness of the adversarial process. That's not what we have here, in my judgment. Maybe this, Your Honor, exemption one under FOIA allows the government to withhold information that is responsive to a FOIA request if it's classified, only if it's classified. And it, in fact, gives the district court authority, this also under the 1974 amendments, to independently review, and this Court also, obviously, to independently review whether it is properly classified. There is no FOIA exemption for national security information that isn't classified. There isn't any FOIA exemption for that. So if this information, which I have no idea what it is, but if this information were responsive to a FOIA request, the government would have to disclose it to us. And that's why I think it is true, Your Honor, that the interest here is different, certainly than it is in the habeas case or other kinds of cases. I wouldn't want to denigrate that interest. I think it's an important interest that Congress took very seriously. But Congress already drew the, drew lines, a number of lines, with all the exemptions under, you know, subsection D of 552, of where they thought information could be withheld and where it could not. And one of the lines they drew with respect to national security information was, is the information classified? It's not just national security, though, Counselor. It's also, you know, ongoing investigations. I mean, it's a, it's a much different. Yes, Your Honor. There are lots of exemptions. Personnel. Yeah, personnel files. There are, there are. And each of those has their own logic and limiting principle. Right. Right? Because they're meant to be narrowly construed. They're exceptions, not the rule. For example, Exemption 7, ongoing, or law enforcement information. This is law enforcement information only if it's then one of these other things, like could lead to someone's death, is attorney-client, or is part of enforcement proceedings. And even then it has its own limits. The enforcement proceedings has a separate subsection in D which has other limits in it. So those are all very narrowly drawn. At least in the parts of the brief that I've seen, the government hasn't made an argument that actually it fits under one of those narrowly drawn exemptions in Section 7, nor has it argued, or obviously it hasn't argued, that it's classified. So really this Court, I think, would be the first. I mean, it sounds like a fine line, Your Honor, but really there isn't a published decision anywhere where the Court abrogates the adversarial system in any kind of case. It's in the name of information that isn't public. Were you supplied with a copy of the 28-day letter? Yes. Okay. I mean, doesn't that, although I have to say, in trying to read the D.C. Circuit's opinion, I found myself in your position, counsel, because so much of it was redacted. I had a very difficult time figuring out what it was that the D.C. Circuit decided. Yes, Your Honor, and the critical point is the lawyers in that case, for the petitioner, the other side, they got to see the full opinion. I mean, that's the fundamental difference here. I don't want to prejudge the question. I can't, whether my clients and the public at large can see whatever this information is, because I haven't seen it yet to make that assessment. But the D.C. Circuit, when they make these assessments, the lawyers get to see it, too, and then we get the benefit of the adversarial process. What's your response to Ms. Brinkman's argument that the role for the Article III judge in this instance is to review the information that is the subject of the request in camera, and that satisfies the due process concern, that a neutral and detached magistrate looks at the information and says, nope, it can't be disclosed under the law? The only case they cite for that is Meridian. In Meridian, the next line of it, after that line that they quote says, you know, this is a unique situation, and so we're not making law for other cases here. And they don't do sort of the detailed due process analysis that you see. Do you use in-camera proceedings for that purpose all the time in all kinds of cases where there is sensitive information that is somehow relevant in a case? I think I would say all the time where if it's national security, it's classified information. Well, I'm not just talking about national security. I mean, in-camera proceedings, for example, in conjunction with grand jury investigations and in conjunction with litigation involving personnel matters that may contain sensitive medical evaluations, that sort of stuff, district judges do this all the time. Yes, Your Honor, but each of those has their own logic and limiting principle. You've got two competing cases. But are you arguing that the lawyer is entitled to see all of those kinds of documents? In all of those contexts? No. It depends on the context, right? So my point, Your Honor, is, well, for example, your grand jury proceeding, that's secret, and the defense lawyer doesn't get to see what happens at the grand jury proceeding. But it has a logic to it. It has a limitation. And the limitation is it's only going to be in grand jury proceedings. So it's not going to swallow, you know, the exception that kind of swallows the rule. Okay. I think we understand your position. I don't want to belabor it. Do you want to say a word about the jurisdictional question? I'll try, Your Honor. I mean, what I have to – and the Court is correct, Your Honor. You're correct that Copley Press involves a third party, and it is different for that reason. But I don't have a good sense of whether that distinction is relevant in this context or not. I can't tell. Mandamus jurisdiction, you know, in my view, it requires that there be a legal error. In general, district court decisions unsealing their own orders are reviewed for abuse of discretion. So it would be unusual here if we had legal error. But I don't know if we do or not. The sealed part of the opinion in Copley Press, which the government was talking about, this is, again, an important point that goes to the due process issue that I was discussing earlier, Your Honor. That's the last opinion in the case. In Copley Press, you have a plea agreement arising out of a criminal case, and then the case is over. So there isn't a due process concern there that the parties need to see this document now in order to litigate the rest of the case because the case is over. So Copley Press then, unsurprisingly, says nothing about the due process clause. And I think for that reason, the litigants' interest in seeing this document is different from just the general public's right to see it, you know, from a due process standpoint. So I think it's different for that reason. I gather your position that, arguendo, if the court were inclined to see things the government's way, we would at the very least have to indicate the exemption in FOIA that we were relying upon for not disclosing it, I gather. Well, yes, Your Honor. But more than that, if this were an exemption under FOIA and this were happening in the district court, we'd get a bond index. So we'd get a summary of what this document was, and we'd get to see the parts that weren't troublesome. I haven't seen even one word of the district court order. So surely if we're trying to narrowly tailor it, shouldn't I get to see whether we won or lost? Or, you know, this is the first time I heard it's a procedural order. So then, you know, is there anything that I can know about what it's about, or is there any part of it? I was talking about an order unsealing. Oh, I see. I see. But my point is just the gross unfairness of that to me seems that if this were actually an exemption process where we were following like in the FOIA process what happens in the district court, I would get to see a lot more information than I've been able to see in this appeal. And there's a whole process that would be followed that hasn't been followed here. The last thing I'll say about that, Your Honor, Judge Tallman, you may recall a few years ago, you actually argued another case in front of you. I remember it well. We do. It was a brilliant argument. Oh, thank you, Your Honor. Thank you. And you won. I did win, Your Honor. And one of the reasons that we won was because the government there had a claim involving national security. This is Nataraja V. Gonzalez. And the government claimed that certain information about my client showed that he was a national security threat. And we disproved that, and we disproved it because of information that we had that really the immigration judge wouldn't have had any easy way to know, information about the geography of Sri Lanka and then the way the detention center was structured, things like that. And that's information that I had that I wouldn't have obviously been able to provide to the court if I didn't have the underlying rationale involved. Now, here you have a district judge. We've been litigating this case since 2007 and have been heavily involved in all of this in a variety of different ways. We know a lot about this information, too. The district judge obviously knows a fair amount, having been involved in the case for a few years. But there's a lot of information that counsel knows, and the counsel knows through conversations with clients, et cetera, that isn't otherwise available. So I guess I'm just saying that to suggest that I really would request that the court not decide the underlying merits at this time. Give us access to the information subject to a protective order. It's what's done all the time in the D.C. Circuit cases, even with classified information. And the reason why I would like to do that is because we really would like an opportunity to participate in the appeal. Counsel, I don't think anyone is going to fault you for the inadequately representing your client and participating in the adversary process. Thank you. Thank you, Your Honor. Nice to see you again, counsel. Thank you. Your Honor, just two very quick points. On the collateral or jurisdiction question, I was remiss in not citing the D.C. Circuit case in Amazan. That goes through the very analysis that we were discussing before. The only other point I wanted to emphasize is what we're talking about here is sensitive national security and law enforcement information that was provided to court to explain, pursuant to court order, further why things were not disclosed under FOIA. It's not a FOIA exemption, per se. It's the explanation for what's occurring. And I point to both lying reasons from this case and the REF case from the D.C. Circuit with all due respect to opposing counsel. I think both of those cases or situations where it wasn't classified information at all. Lying reasons, I believe, was the raisin industry was heavily regulated. There was some investigations going on. One of the companies filed a FOIA request, I think because they were under investigation for documentation from USDA. And that was the kind of information there that was ex parte and in camera. In REF, it was a very interesting case in which there was a FOIA request for information from the physician at Navy who provided prescription drugs to members of Congress. And there was an ex parte in camera affidavit by the physician explaining how some drugs, just the fact that their existence could be indicative of what they were treating. It just wasn't classified information. So I think that, you know, there is clear precedent. Congress has certainly provided for it. It sounds like grounds for an attack ad to me. I'm not sure what it was for, Your Honor, but it's not classified information. We could escape the political climate prevailing today. Yes. It's actually a very old case. Ben Judge Scalia authored it. It was a while ago. Okay. Thank you. Thank you. The Court will stand adjourned for its public session today. And we will proceed to ask any questions we have of the Government Counsel regarding the in-camera matters involved in the case. So the Court for this session, public session, stands adjourned. All rise for the second round of hearings.
judges: Schroeder, Tallman, Smith M.